UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

SONIA J. REED,     Plaintiff,

v.     Civil Action No. 3:18-cv-254-DJH-RSE

LILLIAN PARKER et al.,     Defendants.

\* \* \* \* \*

## **MEMORANDUM OPINION AND ORDER**

Plaintiff Sonia Reed claims that she was discriminated against on the basis of her race and seeks redress under Title VII of the Civil Rights Act of 1964. (Docket No. 1, PageID # 4) Defendants K6, LLC and Play Dance Club Louisville have moved to dismiss Reed's claims for failure to state a claim. (D.N. 27) Reed filed a pro se "motion" (D.N. 28) in which she responded to the arguments made in the motion to dismiss. The Court construes this filing as a response to the motion to dismiss. K6 and Play filed a reply. (D.N. 30) For the reasons set forth below, the Court will grant the motion to dismiss.[1]

**I.**

The following facts are set forth in the complaint and taken as true for purposes of the present motion. *See Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009)). Early in the morning of June 16, 2017, Reed received a call from her daughter directing her to "come to work as a bartender at the Pride Festival" because one of the scheduled bartenders had failed to appear for work. (D.N. 1-2, PageID # 27) K6 has since clarified that the festival referred to in the complaint is the Kentuckiana

---

[1] Reed has also filed a motion that effectively asks for leave to file a surresponse. (D.N. 31) K6 and Play have not opposed that motion. Reed's motion will be granted, and the Court has considered the surresponse.

1

Pride Festival, an annual event hosted by the nonprofit entity Kentuckiana Pride Foundation (KPF). (D.N. 27-1, PageID # 95) It is undisputed that KPF paid Defendant America's Best Bartenders and Servers to provide bartenders, barbacks, and gate staff for the festival. (D.N. 27-2, PageID # 102) Defendant Lillian Parker, owner of ABBS, placed Reed at a position on the main bar. (D.N. 1-2, PageID # 31) Reed was reluctant to work there because she "did not feel comfortable being the only black woman behind the main bar." (*Id.*) She conveyed her "concerns and reluctance"—as well as her unwillingness to split her tips—to Parker, but Parker placed Reed behind the main bar anyway. (*Id.*)

As she approached the main bar to prepare her workspace, Reed observed a group of white bartenders that "all stopped talking and stared" at her when they realized she was wearing a bartending uniform. (*Id.*) A "white man with blonde hair" walked up to Reed and asked, "Are you what Lillian sent?" (*Id.*, PageID # 33) Reed was "instantly offended," but explained to the man that she was working as a replacement bartender at Parker's behest. (*Id.*) The man introduced himself to Reed as Joe Brown, the owner of Play Dance Club. (*Id.*) He told Reed, "We're sponsoring this Pride Festival, so you need to know who I am." (*Id.*) Reed stated that she worked diligently and turned her station into a "mini-party" despite the hostility she experienced. (*Id.*, PageID # 34) But as the day progressed, Reed felt that she was treated differently than the other bar staff. Unlike the white bartenders, Reed was assigned to a register on the back side of the bar, acted as her own barback, and was given an "unattractive bucket" to use as a tip jar. (*Id.*) And although staff supervised all the bartenders during the event, Reed alleges that Brown "kept [Reed] under constant surveillance" and frequently picked up cash from her register in particular. (*Id.*) According to Reed, Brown made her "feel as though he was trying to get me to steal because he kept trying to get me to do things that I considered questionable." (*Id.*, PageID # 34)

Later in the day, a customer told Reed to keep a ten-dollar tip for herself, and Reed confirmed with another bartender that she could do so. (*Id.*, PageID # 32) Reed then put the tip money into her pocket instead of her tip jar. (*Id.*) Brown saw Reed pocket the money and reacted by shouting, "I know you were over here stealing. I been watching you all day, and I saw you put money in your pocket! You thief, I caught you stealing!" (*Id.*) Reed attempted to explain herself, but Brown refused to listen or question any of the witnesses who could have corroborated her story. (*Id.*) Brown escorted Reed out of the festival while loudly calling her a thief. (*Id.*) The situation was serious, but both Brown and Parker assured Reed that she would receive the money she had earned. (*Id.*) Reed later overheard a conversation between Parker and another bartender in which Parker said that "what Joe Brown and them white people did to [Reed] was just wrong." (*Id.*, PageID # 29) Despite Brown and Parker's assurances, Reed never received pay for that day; Parker removed Reed from her employment roster; and Reed's daughter overheard Parker saying that she would never hire Reed to work again. (*Id.*, PageID # 30)

Reed filed complaints against both ABBS and Play with the United States Equal Employment Opportunity Commission (*id.*, PageID # 19–24), claiming that she was terminated and treated unfairly because of her race. (*Id.*) The EEOC dismissed both complaints and provided Parker with right-to-sue letters. (*Id.*, PageID # 19–23) Reed filed this case on April 23, 2018. (D.N. 1) K6 and Play seek dismissal of Reed's complaint for failure to state a claim. (D.N. 27)

**II.**

To survive a motion to dismiss for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the plaintiff pleads factual content that allows

3

the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Factual allegations are essential; "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," and the Court need not accept such statements as true. *Id.* A complaint whose "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct" does not satisfy the pleading requirements of Rule 8 and will not withstand a motion to dismiss. *Id.* at 679.

### III.

K6 and Play primarily argue that they cannot be liable to Reed for employment discrimination because they never shared an employment relationship with her. (D.N. 27-1, PageID # 99) Reed opposes this assertion, claiming that Brown acted as her boss and that therefore Brown, Play, and K6 are liable for the allegedly discriminatory actions of firing her, placing her in an unfavorable position, and denying her tips. (D.N. 28, PageID # 106) In the absence of an employer-employee relationship between Reed and Play Dance Club, the Court finds in favor of the Defendants.

A Title VII claim generally requires an employer–employee relationship between the defendant and plaintiff, *McQueen v. Equinox Int'l Corp.*, 36 F. App'x 555, 556 (6th Cir. 2002); Title VII's protections do not extend to independent contractors. *Jammal v. Am. Family Ins. Co.*, 914 F.3d 449, 455 (6th Cir. 2019), *cert. denied*, No. 19-248, 2019 WL 6689667 (Dec. 9, 2019). The Sixth Circuit evaluates the nature of the employment relationship by applying the common law of agency and the factors set out in *Nationwide Mutual Insurance Co. v. Darden*, 503 U.S. 318 (1992). *See Weary v. Cochran*, 377 F.3d 522, 525 (6th Cir. 2004) (applying *Darden* factors to evaluate a claimed employment relationship). *Darden* requires that the Court

> consider the hiring party's right to control the manner and means by which the product is accomplished. Among the other factors relevant to this inquiry are the

4

> skill required; the source of the instrumentalities and tools; the location of the work; the duration of the relationship between the parties; whether the hiring party has the right to assign additional projects to the hired party; the extent of the hired party's discretion over when and how long to work; the method of payment; the hired party's role in hiring and paying assistants; whether the work is part of the regular business of the hiring party; whether the hiring party is in business; the provision of employee benefits; and the tax treatment of the hired party.

503 U.S. at 323–24 (quoting *Cmty. for Creative Non-Violence v. Reid*, 490 U.S. 730, 751–52 (1989)). The Court must consider "the entire relationship, with the most important factor being the employer's ability to control job performance and employment opportunities of the aggrieved individual." *Swanson v. Univ. of Cincinnati*, 268 F.3d 307, 319 (6th Cir. 2001) (quotation omitted). Although "the extent of control is not dispositive," *Bryson v. Middlefield Volunteer Fire Dep't, Inc.*, 656 F.3d 348, 354 (6th Cir. 2011) (internal punctuation and citation omitted) (quoting *Ware v. United States*, 67 F.3d 574, 577–78 (6th Cir. 1995)), "the idea of control is 'embodied in many of the specific factors,' the analysis of which 'reflects upon, and is relevant to, this core issue of control.'" *Marie v. Am. Red Cross*, 771 F.3d 344, 356 (6th Cir. 2014) (quoting *Weary*, 377 F.3d at 525). If the hiring party sufficiently controls the hired party then the hired party is an employee; if the hired party controls his or her own employment, he or she is an independent contractor and the protections of Title VII do not apply. *See Jammal*, 914 F.3d at 455.

Applying the *Darden* factors, the Court finds no merit in Reed's claim that she was Play's employee.[2] *See Shah v. Deaconess Hosp.*, 355 F.3d 496, 499–500 (6th Cir. 2004) (applying common law of agency and *Darden* factors to evaluate employment relationship); *see also Minnis v. McDonnell Douglas Tech. Servs. Co.*, 162 F. Supp. 2d 718, 732–33 (E.D. Mich. 2001)

---

[2] The Court does not reach the question of Reed's employment status as to ABBS because ABBS is not a party to the present motion.

(dismissing Title VII claims where plaintiff worked for a temp agency that contracted with Caterpillar to provide work and finding that "[t]here was no 'employer–employee' relationship between Plaintiff and Caterpillar"). Reed has alleged no facts suggesting that Play or K6 had the authority to control any aspect of her employment. *See Marie*, 771 F.3d at 356 (observing that control is the core concept of the *Darden* analysis). To the contrary, it was Parker who positioned Reed behind the main bar—against Reed's wishes—and Parker who facilitated Reed's access to the festival. Reed does not assert that she ever worked at Play Dance Club's physical location in Louisville, received compensation from Play, or entered into any contractual relationship with Play. Play did not provide her with training or bartending equipment, and the work took place at the festival, not at Play's location in Louisville. The "relationship" between Reed and Play lasted less than one day, and Reed does not allege that Play had any authority to assign her additional duties. Finally, Reed has not asserted that Play is in the regular business of hiring bartenders for festivals, and since Play never paid Reed, the questions of tax liability and employee benefits are inapplicable.

In sum, Reed has not alleged the facts necessary to support a finding that K6 or Play controlled her employment under any of the relevant factors, and therefore Reed has not sufficiently pled that she is an employee of K6 or Play. *See Bryson*, 656 F.3d at 352 (applying the *Darden* factors the common law of agency to determine employment status); *cf. Mehr v. Starwood Hotels & Resorts Worldwide, Inc.*, 72 F. App'x 276, 279 (6th Cir. 2003) (holding that on-call bartender for a banquet was an employee of the hotel; plaintiff did not sue the organizers of the banquet). Because Reed is not an employee, Title VII does not protect her and her claim fails as a matter of law. *See Jammal*, 914 F.3d at 455.

## IV.

Taking all facts alleged in the complaint as true, the Court cannot find that Reed has stated a plausible claim for relief against Defendants K6 and Play. Even under the "less stringent standard" applied to pro se filings, *Haines v. Kerner*, 404 U.S. 519, 519 (1972), Reed's complaint does not establish facts from which the Court could find the type of relationship between Reed and K6 or Play needed to support a Title VII claim. Accordingly, and the Court being otherwise sufficiently advised, it is hereby

**ORDERED** as follows:

(1) K6, LLC and Play Dance Club Louisville's motion to dismiss (D.N. 27) is **GRANTED**. K6 and Play Dance Club are thus terminated as parties in this action.

(2) Reed's Motion to Deny Motion to Dismiss (D.N. 28) has been construed as a response to the motion to dismiss and as such is **DENIED** as moot.

(3) Reed's Motion for Inclusion and Consideration of Surresponse (D.N. 31) is **GRANTED**. The Court has considered the filing as a brief in opposition to the motion to dismiss.